IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Sharon W. Fields, as Personal Representative for the Estate of James W. Fields, III, ) ) ) ) | C/A No. 8:22-cv-01654-DCC |
| Plaintiff, ) ) ) | **OPINION AND ORDER** |
| v. ) ) | |
| Hallmark Specialty Insurance Company and Nautilus Insurance Company, ) ) ) | |
| Defendants. ) _____) | |

This matter comes before the Court on cross-motions for summary judgment. ECF Nos. 37, 38, 39. For the reasons below, the Court denies Plaintiff's motion and grants the motions filed by Hallmark Specialty Insurance Company ("Hallmark Specialty") and Nautilus Insurance Company ("Nautilus").

## I. BACKGROUND

**A. Factual Background**

This declaratory-judgment action arises from a motor vehicle accident that resulted in the death of James W. Fields, III ("Mr. Fields"). At around 3:00 a.m. on September 19, 2019, Mr. Fields was driving a tractor-trailer south on Interstate 85 in Anderson County when his vehicle collided with another tractor-trailer parked on the shoulder of the interstate. ECF No. 35 at 2–3. Mr. Fields sustained fatal injuries in a fire that followed the crash. *Id.* at 3.

1

The parked tractor-trailer was registered to Crane Transport, Inc. ("Crane Transport") and operated by Stanley Hart ("Mr. Hart"). *Id.* at 2. At the time of the accident, Crane Transport was insured under three liability policies: a Commercial Auto Policy issued by American Hallmark Insurance Company ("American Hallmark"), a Commercial General Liability Policy ("CGL Policy") issued by Hallmark Specialty, and an Excess Liability Policy ("Excess Policy") issued by Nautilus. *Id.* at 2, 4.

In January 2020, Mr. Fields' estate sued Crane Transport and Mr. Hart in South Carolina state court, asserting claims for negligence/negligence per se; negligent entrustment; negligent hiring, supervision, and retention; wrongful death; and survival ("Wrongful Death Action"). ECF No. 1-1. Crane Transport and Mr. Hart removed the case to federal court, and in January 2022, on the eve of trial, the parties settled. ECF No. 35 at 3. Under the settlement agreement, American Hallmark agreed to pay its policy limits to Mr. Fields' estate. *Id.* at 4. The agreement also contemplated that the estate would seek declaratory relief in federal court to resolve whether the CGL and Excess Policies provide additional coverage. *Id.*

**B. The CGL Policy**

The CGL Policy covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 1-3 at 21. Crane Transport's employees qualify as "an insured" under the policy when performing "acts within the scope of their employment by [Crane Transport]" or "duties related to the conduct of [its] business." *Id.* at 30.

The CGL Policy contains several exclusions, two of which are relevant here. First, the policy excludes coverage for "'[b]odily injury' or 'property damage' arising out of the

2

ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." *Id.* at 44. The definition of "auto" includes "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." *Id.* at 33. The first exclusion, which the Court will refer to as the "Standard Auto Exclusion," applies

> even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . that is owned or operated by or rented or loaned to any insured.

*Id.* The second exclusion, known as the "Absolute Auto Exclusion," similarly excludes coverage for "any 'bodily injury', 'property damage' or medical expenses, arising in whole or in part out of, the ownership, non-ownership, maintenance, use or entrustment to others of any 'auto.'" *Id.* at 70.

**C. The Excess Policy**

> The Excess Policy provides that Nautilus
>
> will pay on behalf of [Crane Transport] the 'ultimate net loss' in excess of the 'underlying insurance limit' because of injury or damage caused by a 'loss event' to which this insurance applies provided . . . [t]he aggregate amount of all limits of 'Underlying Insurance' . . . has been exhausted by payment of judgments, settlements, costs or expenses.

ECF No. 1-4 at 6. The CGL Policy issued by Hallmark Specialty is the only policy identified in the Excess Policy's "Schedule of 'Underlying Insurance.'" *Id.* at 4.

The Excess Policy also contains an auto exclusion, which excludes coverage for "any injury or damage, costs or expenses arising out of, resulting from, caused or contributed to by the ownership, maintenance, use, loading or unloading or entrustment to others of any auto." *Id.* at 20.

3

**D. Procedural History**

Plaintiff filed this lawsuit against Hallmark Specialty and Nautilus on May 25, 2022, seeking a declaration that Defendants are obligated to provide indemnity coverage under their respective policies. ECF No. 1. On July 25, 2022, Hallmark Specialty and Nautilus answered the complaint and counterclaimed for a declaration of no coverage. ECF Nos. 6, 9. On May 17, 2024, the parties cross-moved for summary judgment.[1] ECF Nos. 37, 38, 39. These motions are fully briefed and ripe for review. ECF Nos. 40, 41, 42, 43, 45.

## II. LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the Court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020).

---

[1] Hallmark Specialty styles its motion as a "Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment." But because the parties, including Hallmark Specialty, rely on matters outside the pleadings, the Court construes its motion as one for summary judgment only. *See Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) ("A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)."); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("[W]hen a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint." (internal quotation marks omitted)).

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does so, the burden shifts to the nonmoving party to "go beyond the pleadings" and come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To withstand summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

### III. DISCUSSION

**A. The Court Will Apply Georgia Law**

The Court must first decide which state's law governs the terms of the CGL and Excess Policies. As a federal court sitting in diversity, the Court applies the forum state's choice-of-law rules to determine the controlling substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "In insurance coverage disputes, South Carolina courts have historically followed the doctrine of *lex loci contractus,* applying the law of the state where the insurance contract was formed." *Bowman v. Cont'l Ins. Co.*, No. 99-2540, 2000 WL 1173992, *2 (4th Cir. Aug. 18, 2000). But this general rule was modified when the General Assembly enacted what is now S.C. Code § 38-61-10. *Russell v. McGrath*, 135 F. Supp. 3d 427, 430 (D.S.C. 2015). That statute provides that "[a]ll contracts of insurance on property, lives, or interests in this State are considered to be made in the State . . . and are subject to the laws of this State." S.C. Code Ann. § 38-

5

61-10.  When applicable, § 38-61-10 "governs as South Carolina's rule of conflicts." *Sangamo Weston, Inc. v. Nat'l Sur. Corp.*, 414 S.E.2d 127, 130 (S.C. 1992).

Here, both the CGL and Excess Policies were issued and delivered to a Georgia-based company.  ECF Nos. 1-3 at 11; 1-4 at 3; 35 at 2.  Although the accident occurred in South Carolina and resulted in the death of a South Carolina resident, § 38-61-10 is not triggered because neither policy insured property, lives, or interests in the state.  *See Sangamo*, 414 S.E.2d at 130 ("What is solely relevant is where the property, lives, or interests insured are located.").  Accordingly, the Court will follow the traditional *lex loci contractus* rule and apply Georgia law in resolving the parties' motions.  *See Integon Nat'l Ins. Co. v. Gomez*, No. 2:19-cv-02958-DCN, 2020 WL 6709972, at *3 (D.S.C. Apr. 21, 2020) ("South Carolina courts will apply the law of the place where an insurance contract was formed unless the insurance contract covers property, lives, or interests in South Carolina."); *Unisun Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184 & n.1 (S.C. Ct. App. 1993) (holding that § 38-61-10 did not apply because "at the time the contract was made, the property and interests insured were in the State of New York").

"Insurance in Georgia is a matter of contract and the parties to [a] contract of insurance are bound by its plain and unambiguous terms . . . ." *Lima Delta Co. v. Glob. RI-022 Aerospace, Inc.*, 789 S.E.2d 230, 233 (Ga. Ct. App. 2016) (quoting *State Farm Fire & Cas. Co. v. Goodman*, 576 S.E.2d 49, 51 (Ga. Ct. App. 2002)).  An unambiguous contract "must be enforced as written," and courts should not expand "the rights of the parties to an insurance policy . . . beyond the terms of the policy." *Giddens v. Equitable Life Assurance Soc'y of the U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006).  Under Georgia law, "[a]n insurance company may fix the terms of its policies as it wishes, provided they

6

are not contrary to law, and it may insure against certain risks and exclude others." *Fid. Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 619 S.E.2d 704, 706 (Ga. Ct. App. 2005) (quoting *Manning v. USF&G Ins. Co.*, 589 S.E.2d 687, 688 (Ga. Ct. App. 2003)). Thus, an exclusion "that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured." *Id.* (quoting *Manning*, 589 S.E.2d at 688).

**B. The Standard Auto Exclusion and Absolute Auto Exclusion Bar Coverage**

Hallmark Specialty and Nautilus argue that the CGL Policy's Standard Auto and Absolute Auto Exclusions preclude coverage for Plaintiff's claims in the Wrongful Death Action. ECF Nos. 38-1 at 12–13; 39-1 at 22–24. The Court agrees.

The Standard Auto Exclusion excludes coverage for "'[b]odily injury' . . . arising out of the . . . use . . . of any . . . 'auto' . . . owned . . . by . . . any insured." ECF No. 1-3 at 44. There is no dispute that the tractor-trailer operated by Mr. Hart qualifies as an "auto" under the CGL Policy. *Id.* at 33 (defining "auto" as "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads"). Nor is there any dispute that Crane Transport owned the tractor-trailer or that Mr. Fields suffered "bodily injury" as a result of the accident. ECF No. 22 at 5 ("Plaintiff admits . . . that Decedent Fields died of injuries he sustained following a motor vehicle accident between a tractor trailer he was operating and a tractor trailer owned by Crane Transport and operated by Hart in the course and scope of his employment with Crane Transport."). Plaintiff contends, however, that the Standard Auto Exclusion does not apply because Mr. Hart was not "using" the parked tractor-trailer when the accident occurred. ECF No. 37 at 11–12. In Plaintiff's view, because Mr. Hart's

vehicle was stationary, Mr. Fields' injuries did not arise out of its use.  The Court rejects this overly narrow interpretation of the term "use."

"Whether or not an injury arose from the use of a motor vehicle within the contemplation of a liability policy . . . depends upon the factual context of each case." *Hartford Accident & Indem. Co. v. Booker*, 230 S.E.2d 70, 72 (Ga. Ct. App. 1976) (quoting *Federated Mut. Implement & Hardware Ins. Co. v. Gupton*, 241 F. Supp. 509, 511 (E.D.S.C. 1965)).  In making this determination, Georgia courts consider "(i) the physical proximity of the injury site to the vehicle, (ii) 'the nature of the conduct which caused the situation of jeopardy,' and (iii) whether the vehicle was 'being utilized in the plain and ordinary sense of the word.'"  *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 722 S.E.2d 923, 926 (Ga. Ct. App. 2012) (quoting *Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc.*, 551 S.E.2d 388, 391–92 (Ga. Ct. App. 2001)).

In this case, Mr. Hart pulled into the emergency lane because he had been on duty for nearly 14 hours, the maximum allowed under federal regulations.  ECF No. 35 at 2; *see* 49 C.F.R. § 395.3.  He remained inside the truck and used his navigation system to locate the nearest rest stop, intending to contact Crane Transport once he had found one. ECF No. 37-1 at 3–5.  The collision occurred a mere two minutes after he had pulled over. ECF No. 35 at 2–3.  Given these facts, Mr. Fields' death clearly "originated from, . . . grew out of, or flowed from [Mr. Hart's] use of the [tractor-trailer]."  *Ga. Farm Bureau Mut. Ins. Co. v. Greene*, 329 S.E.2d 204, 206 (Ga. Ct. App. 1985) (internal quotation marks omitted).  The Standard Auto Exclusion therefore applies to bar coverage.

Even if, for argument's sake, the Standard Auto Exclusion did not apply, coverage would still be excluded under the broader Absolute Auto Exclusion based on Mr. Fields'

8

use of his tractor-trailer. That exclusion precludes coverage for injuries "arising in whole or in part out of[] the . . . use . . . of any 'auto'" — without qualification. ECF No. 1-3 at 70. "Whether or not a person was insured or uninsured under the [CGL] [P]olicy does not matter," as the Absolute Auto Exclusion "is not tied to any type of person who uses an auto." *Crossett Paper Mills Emps. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, No. 05-CV-1025, 2006 WL 1582077, at *4 (W.D. Ark. June 2, 2006). "It excludes coverage for any use of *any* auto, regardless of who is using it." *Id.* (emphasis in original); *see Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 754 (2d Cir. 2023); *Colony Ins. Co. v. Wright ex rel. Wrongful Death Beneficiaries of Wright*, 16 F.4th 1186, 1190 (5th Cir. 2021).

Plaintiff offers two final arguments in favor of coverage. Neither is persuasive. First, Plaintiff asserts that the Standard Auto and Absolute Auto Exclusions do not apply to Crane Transport's negligent retention of Mr. Hart, which Plaintiff argues is a "separate cause" of Mr. Fields' injuries. ECF No. 37 at 9, 11. "When the phrase 'arising out of' is found in an exclusionary clause of an insurance policy, [Georgia courts] apply the 'but for' test traditionally used to determine cause-in-fact for tort liability." *Hays*, 722 S.E.2d at 927.

> [T]he exclusionary clause is focused solely upon the genesis of the underlying plaintiff's claims — if those claims arose out of the excluded acts . . . then coverage need not be provided. Claims arise out of [t]he excluded conduct when 'but for' that conduct, there could be no claim against the insured.

*Id.* (quoting *Video Warehouse v. S. Tr. Ins. Co.*, 678 S.E.2d 484, 488 (Ga. Ct. App. 2009)). The estate's negligence-based claims against Crane Transport are excluded from coverage because "those claims arose out of the excluded conduct that resulted in the

9

accident." *Video Warehouse*, 678 S.E.2d at 488 (holding that a negligent hiring and retention claim fell within the scope of an auto exclusion contained in the employer's business liability policy). In other words, because the estate's claims would not exist but for the excluded acts of Mr. Fields and Mr. Hart, coverage does not apply. *See Sauls v. Allstate Prop. & Cas. Ins. Co.*, 757 S.E.2d 455, 458 (Ga. Ct. App. 2014) ("Whatever the Saulses' theory of the McAllisters' liability, the claims they have asserted against the McAllisters for Cheyenne Sauls' fatal injuries would not exist but for Lark's use of a motor vehicle.").

Second, Plaintiff argues that "if the exclusions are read to preclude coverage for the Wrongful Death Action claims, then the CGL Policy is illusory because it effectively provides no coverage for Crane Transport's [trucking] business." ECF No. 37 at 12. But this is not a case where an exclusion "completely nullifies" coverage. *First Mercury Ins. Co. v. Sudderth*, 620 F. App'x 826, 830 (11th Cir. 2015) (quoting *Cynergy, LLC v. First Am. Title Ins. Co.*, 706 F.3d 1321, 1327 (11th Cir. 2013)). Like many trucking companies, Crane Transport purchased the CGL Policy to protect against general business risks that fall outside the scope of its Commercial Auto Policy. ECF No. 40 at 4–6; s*ee Strickland v. Auto-Owners Ins. Co.*, 615 S.E.2d 808, 810 (Ga. Ct. App. 2005) (explaining that "it is a common industry practice for motor common carriers . . . to obtain two separate policies of insurance to provide seamless coverage for different risks: (1) a commercial general liability policy . . . , which excludes motor vehicle liability and (2) a separate policy to cover motor vehicle liability exposure"). As just one example, the CGL Policy covers injuries arising from loading or unloading a tractor-trailer with a "mechanical device" such as a

10

forklift — a risk that the Commercial Auto Policy expressly excludes.[2]  Thus, because the CGL Policy provides coverage for some possible claims, the policy is not illusory.  *See RAM Hotel Mgmt., LLC v. Hartford Fire Ins. Co.*, 614 F. Supp. 1342, 1349 (N.D. Ga. 2022) ("[A]n insurance policy is only illusory when it results in a complete lack of any policy coverage." (quoting *G&A Fam. Enters. v. Am. Fam. Ins. Co.*, No. 1:20-cv-3192-JPB, 2021 WL 1947180, at *6 (N.D. Ga. May 13, 2021))).

## IV. CONCLUSION

In sum, the Court finds that the claims asserted by Mr. Fields' estate in the Wrongful Death Action are excluded from coverage under the Standard Auto and Absolute Auto Exclusions.  Because the underlying CGL Policy does not provide coverage, the Excess Policy is not triggered.  Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment [37], **GRANTS** Nautilus's motion for summary judgment [38], and **GRANTS** Hallmark Specialty's motion for summary judgment [39].

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

December 4, 2024
Spartanburg, South Carolina

---

[2] Under the Standard Auto and Absolute Auto Exclusions, the "use" of an "auto" includes "loading or unloading."  ECF No. 1-3 at 44, 70.  The definition of "loading or unloading," however, specifies that the term "does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the . . . 'auto.'"  *Id.* at 34.  The Commercial Auto Policy, on the other hand, excludes coverage for injuries "resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto.'"  ECF No. 40 at 5.  Therefore, injuries involving a forklift during the loading or unloading of a tractor-trailer would be covered under the CGL Policy, not the Commercial Auto Policy.  *See generally Int'l Paper Co., v. QBE Ins. Co.*, Nos. 3:09-CV-347-WKW, 3:07-CV-206-WKW, 3:05-CV-1001-WKW, 2010 WL 1856193, at *2, 5–6 (M.D. Ala. May 5, 2010) (discussing the interplay between policies worded similarly to those at issue here in a case involving this factual scenario).